# WEBSTER *v.* LUTHER.

ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 161. Submitted March 19, 1896. — Decided May 18, 1896.

Persons entitled under Rev. Stat. § 2304 to enter a homestead, in case an entry is made for less than 160 acres, may, under § 2306, make an additional entry for the deficiency, which right is transferable.

The instrument executed by Mrs. Robertson through which the defendants in error claim was not forbidden by any act of Congress, and was valid.

The case is stated in the opinion.

*Mr. J. L. Washburn* and *Mr. Daniel H. Toomey* for plain-tiff in error.

*Mr. Cushman H. Davis, Mr. Frank B. Kellogg, Mr. Cordenio A. Severance, Mr. George P. Wilson* and *Mr. John R. Vanderlip* for defendants in error. *Mr. A. Jaques,* and *Mr. J. J. Hudson* for Rouchleau, and *Mr. D. G. Cash* and *Mr. J. G. Williams* for Luther.

MR. JUSTICE HARLAN delivered the opinion of the court.

This action involves the title to lots one and two, section eighteen, in township sixty-two, of range fourteen west, situated in St. Louis County, Minnesota.

At the trial below, the plaintiff Webster read in evidence, without objection —

1. The application of Mary Robertson, widow of James A. Robertson, deceased, of Benton County, dated April 7, 1887, (together with the receipt of the register of the local land office showing the payment of the fee and commissions prescribed by law,) to enter the lands here in dispute, under section 2306 of the Revised Statutes, granting *additional* lands to soldiers and sailors who served in the war of the rebellion. 2. The receipt of the proper land office, dated April 7, 1887, showing the payment in full of the balance required by law for the entry of the above lots, under section 2291 of the Revised Statutes of the United States. 3. A patent from the United States to Mary A. Robertson for these lands, issued September 21, 1888, recorded February 11, 1889, in the office of the register of deeds in St. Louis County, Minnesota, and purporting to have been issued pursuant to the act of Congress, approved May 20, 1862, " to secure homesteads to actual settlers on the public domain," 12 Stat. 392, c. 75, and the acts supplemental thereto. This patent recited that the claim of the patentee to the lots in controversy had been established and duly consummated in conformity to law. 4. A quitclaim deed of bargain and sale of these premises

from Mary A. Robertson, widow, to the plaintiff Webster, dated October 7, 1890, acknowledged October 17, 1890, and recorded October 22, 1890.

The defendants read in evidence a power of attorney, dated April 28, 1880, and duly recorded April 8, 1887, from Mary A. Robertson to James A. Boggs. This instrument authorized and empowered Boggs, as attorney for his principal, "to sell, upon such terms as to him shall seem meet," any lands which the principal then owned, either in law or equity, and obtained by her as "an additional homestead" under the provisions of section 2306 of the Revised Statutes; to sell any such lands as she might thereafter acquire under said acts; to receive the purchase money or other consideration therefor, and to deliver in the name of the principal such deeds or other assurance in the law therefor as to the agent seemed meet and necessary. It contained these additional clauses: "And my said attorney is hereby authorized to sell said lands, or my interest therein, and to make any contract in relation thereto which I might make if present, and to receive for his own use and benefit any moneys or other property the proceeds of the sale of said lands, or any interest therein, or arising from any contract in relation thereto, or received or recovered for any injury thereto, and I hereby release to my said attorney all claim to any of the proceeds of any such sale, lease, contract or damages. And I further authorize my said attorney to appoint a substitute or substitutes to perform any of the foregoing powers, hereby ratifying and confirming all that my said attorney or his substitute may lawfully do or cause to be done by virtue of these presents."

The admission of this power of attorney in evidence was objected to by the plaintiff upon the ground, among others, that it tended to prove a transaction in fraud of and in contravention of the laws of the United States, and that upon its face it was contrary to law, against public policy, fraudulent and void. This objection was overruled and the plaintiff excepted.

The defendants next read in evidence: 1. Two warranty deeds, each for an undivided one half of these lands, from Mary A. Robertson, by James A. Boggs, her attorney in

fact, one to the defendant Louis Rouchleau and the other to the defendant, Milo J. Luther, each dated April 7, 1887, and recorded April 15, 1887. 2. A warranty deed executed subsequently to the above deeds, by Louis Rouchleau to the defendant Luther, for an undivided one fourth of the lands.

The court adjudged that the title was in the defendants, freed from any claim of the plaintiff.

The question before us is whether the instrument of writing given to Boggs by Mary A. Robertson, under date of April 28, 1880, and which authorized the former to sell upon such terms as he deemed meet, and to convey the title to, and to receive for his own use and benefit the proceeds of the sale ·of, any lands obtained by the latter as an "additional homestead" under section 2306 of the Revised Statutes, was consistent with the acts of Congress relating to such matters. This is a question merely of statutory construction, and is within a very narrow compass.

By the act of May 8, 1862, 12 Stat. 392, c. 75, certain persons were given the right, under specified conditions, to enter one quarter section or a less quantity of unappropriated public lands. The sections of that act, so far as they bear upon the present case, were preserved in sections 2289, 2290 and 2291 of the Revised Statutes, which are as follows:

"Sec. 2289. Every person who is the head of a family or who has arrived at the age of twenty-one years, and is a citizen of the United States, or who has filed his declaration of intention to become such, as required by the naturalization laws, shall be entitled to enter one quarter section or a less quantity of unappropriated public lands, upon which such person may have filed a preëmption claim, or which may, at the time the application is made, be subject to preëmption at one dollar and twenty-five cents per acre; or eighty acres or less of such unappropriated lands, at two dollars and fifty cents per acre, to be located in a body, in conformity to the legal subdivisions of the public lands, and after the same have been surveyed. And every person owning and residing on land may, under the provisions of this section, enter other land lying contiguous to his land, which shall not, with the

land so already owned and occupied, exceed in the aggregate one hundred and sixty acres.

"SEC. 2290. The person applying for the benefit of the preceding section shall, upon application to the register of the land office in which he is about to make such entry, make affidavit before the register or receiver that he is the head of a family, or is twenty-one years or more of age, or has performed service in the army or navy of the United States, and that such application is made for his exclusive use and benefit, and that his entry is made for the purpose of actual settlement and cultivation, and not either directly or indirectly for the use or benefit of any other person; and upon filing such affidavit with the register or receiver, on payment of five dollars when the entry is of not more than eighty acres, and on payment of ten dollars when the entry is for more than eighty acres, he shall thereupon be permitted to enter the amount of land specified.

"SEC. 2291. No certificate, however, shall be given, or patent issued therefor, until the expiration of five years from the date of such entry; and if at the expiration of such time, or at any time within two years thereafter, the person making such entry; or if he be dead, his widow; or in case of her death, his heirs or devisee; or in case of a widow making such entry, her heirs or devisee, in case of her death, proves by two credible witnesses that he, she or they have resided upon or cultivated the same for the term of five years immediately succeeding the time of filing the affidavit, and makes affidavit that no part of such land has been alienated, except as provided in section twenty-two hundred and eighty-eight, and that he, she or they will bear true allegiance to the government of the United States; then, in such case, he, she or they, if at that time citizens of the United States, shall be entitled to a patent, as in other cases provided by law. That the proof of residence, occupation or cultivation, the affidavit of non-alienation, and the oath of allegiance, required to be made by section twenty-two hundred and ninety-one of the Revised Statutes, may be made before the judge, or, in his absence, before the clerk, of any court of record of the county

and State, or district and Territory, in which the lands are situated ; and if said lands are situated in any unorganized county, such proof may be made in a similar manner in any adjacent county in said State or Territory; and the proof, affidavit and oath, when so made and duly subscribed, shall have the same force and effect if made before the register or receiver of the proper land district; and the same shall be transmitted by such judge, or the clerk of his court, to the register and the receiver, with the fee and charges allowed by law to him; and the register and receiver shall be entitled to the same fees for examining and approving said testimony as are now allowed by law for taking the same. That if any witness making such proof, or the said applicant making such affidavit or oath, swears falsely as to any material matter contained in said proof, affidavits or oaths, the said false swearing being wilful and corrupt, he shall be deemed guilty of perjury, and shall be liable to the same pains and penalties as if he had sworn falsely before the register."

On the 4th day of April, 1872, Congress passed an act entitled "An act to enable honorably discharged soldiers and sailors, their widows and orphan children, to acquire homesteads on the public lands of the United States." 17 Stat. 49, c. 85. The second section of that act declared that any person entitled under the provisions of the first section "to enter a ‚homestead, who may have heretofore entered under the homestead laws a quantity of land less than one hundred and sixty acres, shall be permitted to enter under the provisions of this act so much land as, when added to the quantity previously entered, shall not exceed one hundred and sixty acres." This section, it will be observed, did not require that the additional land allowed to be entered should adjoin or be contiguous to the land originally entered.

But by the act of June 8, c. 338, 1872, 17 Stat. 333, the act of April 4, 1872, was amended, no substantial change, however, being made in the first section of the last named act. In place of the second section of the act of April 4, 1872, the following section was substituted : " That any person entitled, under the provisions of the foregoing section, to enter a home-

stead who may have heretofore entered, under the homestead laws, a quantity of land less than one hundred and sixty acres, shall be permitted to enter, under the provisions of this act, so much land contiguous to the tract embraced in the first entry as, when added to the quantity previously entered, shall not exceed one hundred and sixty acres." The words "contiguous to the tract embraced in the first entry" clearly indicate that the person who drew the section had in mind to cut off the right to enter additional lands that were not contiguous to those originally entered under the homestead laws.

But the policy indicated by the second section of the act of June 8, 1872, was soon reversed. For, by the act of March 3, 1873, 17 Stat. 605, c. 274, section two of the act of June 8, 1872, was amended so as to read as follows: "That any person entitled under the provisions of the foregoing sections to enter a homestead, who may have heretofore entered under the homestead laws a quantity of land less than one hundred and sixty acres, shall be permitted to enter so much land as, when added to the quantity previously entered, shall not exceed one hundred and sixty acres." This act, it will be observed, omitted the words "under the provisions of this act" and the words "contiguous to the tract embraced in the first entry," that were in the previous act. The effect and, as is manifest, the object of the last act, were to eliminate from the legislation of Congress allowing additional lands to those who had entered less than one hundred and sixty acres under the homestead laws, the requirement that the additional lands should be contiguous to those originally entered.

This view is not at all affected by the revision, for the sections under which the lands in question were entered make no substantial change in the previous law. Those sections are as follows:

"Sec. 2304. Every private soldier and officer who has served in the Army of the United States during the recent rebellion, for ninety days, and who was honorably discharged, and has remained loyal to the government, including the troops mustered into the service of the United States by virtue of the third section of an act approved February

thirteen, eighteen hundred and sixty-two, and every seaman, marine, and officer who has served in the Navy of the United States, or in the Marine Corps, during the rebellion, for ninety days, and who was honorably discharged, and has remained loyal to the government, shall, on compliance with the provisions of this chapter, as hereinafter modified, be entitled to enter upon and receive patents for a quantity of public lands not exceeding one hundred and sixty acres, or one quarter section, to be taken in compact form, according to legal subdivisions, including the alternate reserved sections of public lands along the line of any railroad or other public work, not otherwise reserved or appropriated, and other lands subject to entry under the homestead laws of the United States; but such homestead settler shall be allowed six months after locating his homestead, and filing his declaratory statement, within which to make his entry and commence his settlement and improvement.

"SEC. 2305. The time which the homestead settler has served in the Army, Navy or Marine Corps shall be deducted from the time heretofore required to perfect title, or if discharged on account of wounds received or disability incurred in the line of duty, then the term of enlistment shall be deducted from the time heretofore required to perfect title without reference to the length of time he may have served; but no patent shall issue to any homestead settler who has not resided upon, improved and cultivated his homestead for a period of at least one year after he shall have commenced his improvements.

"SEC. 2306. Every person entitled, under the provisions of section twenty-three hundred and four, to enter a homestead, who may have heretofore entered, under the homestead laws, a quantity of land less than one hundred and sixty acres, shall be permitted to enter so much land as, when added to the quantity previously entered, shall not exceed one hundred and sixty acres."

As the lands in controversy are not contiguous to those originally entered, there would be some ground to contend that the entry made by Mrs. Robertson in 1887 was invalid, but for the omission *ex industria* from the statute of the

requirement, first introduced by the act of June 8, 1872, that the additional lands entered should be contiguous to those entered under the act of 1862, or under the first section of the act of June 8, 1872.

If, then, Congress did not burden the right to additional lands with the condition that they should be contiguous to those originally entered, it would seem necessarily to follow that the grant of additional lands was without restrictions, and, consequently, there was no purpose to interfere with the disposition by the homesteader of such additional lands, or of his interest in them, in any mode he deemed proper or that might be adopted in respect of other property owned by him. Any other construction of section 2306 would, we apprehend, defeat the purpose that Congress had in view when it gave additional lands to those who had made entries under the homestead laws of less than one hundred and sixty acres. We cannot see that any sound policy could have been subserved by restricting the bounty of Congress to those who were able to find additional lands contiguous to those previously entered by them ; and we entirely concur in the views expressed by the Supreme Court of Minnesota. Speaking by Chief Justice Gilfillan, in the present case, it said: "There being nothing in the terms of the section requiring the things specified in the act of 1862, to wit, the making of proofs, affidavits, etc., is there anything in the policy of the government in respect to the subject-matters of the various acts referred to which raises the presumption that Congress intended any of the requirements of the act of 1862 to apply to the 'additional right?' or intended the feature of inalienability impressed on the homestead entered under the act of 1862, or the first section of the act of 1872, should attach to the 'additional right?' The purpose of Congress in giving the right to enter and acquire a homestead under the act of 1862, and the first section of the act of 1872, was not merely to confer a benefaction on the citizen, or discharged soldier. or sailor. There was also the purpose to secure, so far as possible, a *bona fide* settler on the public lands, to promote the peopling and cultivation of those lands.

It was to prevent the evasion of this result that the person applying to enter a homestead is required to make affidavit that the application is made for his or her exclusive use and benefit, for the purpose of actual settlement and cultivation, and not, either directly or indirectly, for the use or benefit of any other person, and on applying for the patent to make proof of residence on, and cultivation of, the land for five years, and an affidavit that no part of the land has been alienated; and it is provided that the land shall not be taken for debts, and that upon any change of residence or abandonment of the land for more than six months the land shall revert. The end in view was the peopling of vacant public lands with settlers owning and cultivating their own homes. To secure settlers or require residence or cultivation was no part of the end in view in giving the additional right under the section as amended in 1872. No residence on or cultivation of the land as a condition of securing the additional right was intended. It was a mere gratuity. There was no other purpose but to give it as a sort of compensation for the person's failure to get the full quota of one hundred and sixty acres by his first homestead entry. There is no reason to suppose it was intended to hamper the gift with conditions that would lessen its value, nor that it was intended to be made in any but the most advantageous form to the donee. After the right was conferred it was immaterial to the government whether the original donee should continue to hold it, or should transfer it to another. Or, rather, as policy requires the peopling of the vacant public lands, and as it could not be expected or desired that the homesteader should abandon his first entry to settle upon the additional land, it would be more for the interest of the government that he should be able to assign his additional right, so that it might come to be held by some one who would settle upon the lands." 50 Minnesota, 77, 83.

Subsequently, the same questions were carefully examined in the Circuit Court of Appeals for the Eighth Circuit in *Barnes* v. *Poirier*, 27 U. S. App. 500. In that case it was held that the right given by section 2306 of the Revised

Statutes to a soldier who had theretofore entered, under the homestead laws, less than one hundred and sixty acres to enter enough more to make up that quantity, was assignable before entry, there being no restriction as in the homestead act. The judgment of the Circuit Court for the District of Minnesota, delivered by Judge Nelson, 57 Fed. Rep. 956, was affirmed. Judge Sanborn, speaking for the Circuit Court of Appeals, well said: "The beneficiary was left free to select this additional land from any portion of the vast public domain described in the act, and free to apply it to any beneficial use that he chose. It was an unfettered gift in the nature of compensation for past services. It vested a property right in the donee. The presumption is that Congress intended to make this right as valuable as possible. Its real value was measured by the price that could be obtained by its sale. The prohibition of its sale or disposition would have made it nearly, if not quite, valueless to a beneficiary who had already established his home on the public domain. Any restriction upon its alienation must decrease its value. We are unable to find anything in the acts of Congress or in the dictates of an enlightened public policy that requires the imposition of any such restraint. On the other hand, the general rule of law which discourages all restraints upon alienation, the marked contrast between the purpose and the provisions of the grant of the right to the original homestead, and the purposes and provisions of the grant of the right to the additional land, and the history of the legislation which is codified in the existing homestead law, leave us without doubt that the assignment before entry of the right to this additional land granted by section 2306 of the Revised Statutes contravenes no public policy of the nation, violates no statute, and is valid as against the assignor, his heirs and assigns." To the same effect were the following cases: *Knight* v. *Leary*, 54 Wisconsin, 459; *Mullen* v. *Wine*, 26 Fed. Rep. 206; *Rose* v. *Nevada &c. Wood & Lumber Co.*, 73 California, 385; *Montgomery* v. *Pacific Coast Land Bureau*, 94 California, 284.

Much stress is placed by the plaintiff in error upon the

practice of the land department during a certain period, based upon the idea that the right of entry given by the statute of additional lands was entirely personal, and not assignable or transferable. We cannot give to this practice in the land office the effect claimed for it by the plaintiff in error. The practical construction given to an act of Congress, fairly susceptible of different constructions, by one of the Executive Departments of the government, is always entitled to the highest respect, and in doubtful cases should be followed by the courts, especially when important interests have grown up under the practice adopted. *Bate Refrigerating Co.* v. *Sulzberger*, 157 U. S. 1, 34; *United States* v. *Healey*, 160 U. S. 136, 141. But this court has often said that it will not permit the practice of an Executive Department to defeat the obvious purpose of a statute. In the present case it is our duty to adjudge that the right given by the statute in question to enter "additional" lands was assignable and transferable; consequently the instrument of writing given by Mary J. Robertson to Boggs was not forbidden by any act of Congress.

It results that the judgment below must be and is

*Affirmed.*