### UNITED STATES v. LAIR.

(District Court, E. D. Arkansas, W. D.   October 23, 1902.)

#### No. 2,339.

1. PUBLIC LANDS—SOLDIER'S ADDITIONAL HOMESTEAD—NATURE OF GRANT.
   An application for the entry of a soldier's additional homestead, under Rev. St. § 2306, is not made under the homestead laws, but such grant is in the nature of a bounty to the soldier.

2. PRESENTING FALSE CLAIM AGAINST UNITED STATES — ACTS CONSTITUTING OFFENSE.
   Under Act July 1, 1890 (26 Stat. 209), which authorizes any officer authorized to administer oaths for general purposes in the state, city,

or county where he resides to administer oaths to all affidavits and declarations to be made or used in any pension or bounty case, a notary public having authority to administer oaths under the laws of the state may take affidavits to be used in support of an application for the entry of a soldier's additional homestead, and the presentation of false proofs and affidavits, purporting to have been sworn to before a notary in support of such an application, if done willfully and fraudulently, constitutes the offense of presenting false evidence in support of a claim against the United States, within Rev. St. § 5438.

Prosecution under Rev. St. § 5438, for presenting false evidence in support of a claim against the United States. On demurrer to indictment.

W. G. Whipple, U. S. Atty.
Morris M. Cohn, for defendant.

TRIEBER, District Judge. The defendant was indicted under the provisions of section 5438, Rev. St. U. S., charged with having unlawfully, willfully, and falsely made and caused to be made a certain claim upon and against the government of the United States for the purpose of defrauding and obtaining from the United States 80 acres of the public lands of the United States as a soldier's additional homestead, under section 2306, Rev. St. U. S., on behalf of one John A. Black, a soldier of the United States in the late Civil War, which claim was caused to be presented by the defendant to the commissioner of the general land office of the United States, an officer of the United States. The falsity of the claim is charged to consist in the fact that the defendant certified as a notary public that the soldier, John A. Black, and two other parties as witnesses appeared before him and made the proofs as required by law, when in truth and in fact none of them ever appeared before him, and the affidavits thus certified to by the defendant were absolutely false.

The ground of demurrer is that the laws of the United States do not authorize a notary public to administer the oath in such cases, and for that reason the government could not have been defrauded, as no entry could be made for such additional homestead entry upon proofs verified before a notary public. It is conceded by the government that, if a notary public is not authorized to administer the oath in such cases, no officer of the government could have granted the application, and for this reason the indictment could not be maintained.

There is no law of the United States authorizing a notary public to take the proofs and administer the oath in homestead cases, but by the provisions of the act of congress of July 1, 1890 (26 Stat. 209), any officer authorized to administer oaths for general purposes in the state, city, or county where such officer resides is authorized to administer oaths to all affidavits and declarations to be made or used in any pension or bounty cases. The question, therefore, to be determined in this case is whether a soldier's additional homestead is to be treated as an application for a homestead under the homestead laws of the United States, or in the nature of a bounty or gift extended by the government to its soldiers in the War of the Rebellion.

In Barnes v. Poirier, 12 C. C. A. 9, 64 Fed. 14, this question was before the circuit court of appeals for the Eighth circuit, the question

being whether the right to land additional to a homestead, granted by section 2306, Rev. St. U. S., was assignable before the additional land was entered. Judge Sanborn, in delivering the opinion of the court, carefully reviewed all the legislation on that subject, and the conclusion reached by him was that this is not a homestead entry, but a mere gift or bounty. The learned judge in his opinion says:

"This brief review of the legislation which has resulted in the existing provisions of the homestead law clearly shows that the purpose and policy which inspired the grants in sections 2289–2291, 2304, 2305, were the very opposite of those which inspired that in section 2306. The purpose of the former was to induce the permanent settlement of the donee upon, and the continued occupation and cultivation by him of, the land granted. Hence the requirements of settlement, cultivation, and occupation for a long period of time before entry, and of the affidavit of the homesteader at the time of final entry that he had not alienated any of the land, and hence the inevitable conclusion that any sale or contract of sale of the right to enter the land or of the land to be entered under these sections was an evasion of one of the main purposes of the act, and was against public policy and void. Anderson v. Carkins, 135 U. S. 483, 10 Sup. Ct. 905, 34 L. Ed. 272. But the beneficiary of the grant under section 2306 had already selected, settled upon, cultivated, and acquired his homestead from the public domain, and was presumably in the occupation of it before that grant was made. The purpose of the grant under that section surely was not to induce him to abandon his homestead, and make a new settlement on the new grant. It was rather to reward him for the services he had already rendered as a soldier in suppressing the Rebellion, and as a farmer in establishing his home upon, cultivating, and occupying that portion of the public domain he had already entered as his homestead. Hence it was that no settlement, no cultivation, no occupation, no affidavit of nonalienation, no affidavit at all was made a condition precedent to the enjoyment of the benefits of this grant or to the entry of the additional land under this section. The beneficiary was left free to select this additional land from any portion of the vast public domain described in the act, and free to apply it to any beneficial use that he chose. It was an unfettered gift in the nature of compensation for past services. It vested a property right in the donee. The presumption is that congress intended to make this right as valuable as possible. Its real value was measured by the price that could be obtained by its sale. The prohibition of its sale or disposition would have made it nearly, if not quite, valueless to a beneficiary who had already established his home on the public domain. Any restriction upon its alienation must decrease its value. We are unable to find anything in the acts of congress or in the dictates of an enlightened public policy that requires the imposition of any such restriction." 12 C. C. A. 12, 64 Fed. 17.

The same question came before the supreme court of the United States in Webster v. Luther, 163 U. S. 331, 16 Sup. Ct. 963, 41 L. Ed. 179, and the same conclusion was reached by that court, citing with approval Judge Sanborn's opinion, and also that of the supreme court of Minnesota, from which court that case was removed to the supreme court of the United States by writ of error. The reasoning of the courts in those cases is so clear and convincing that it is useless for this court to add anything. If this right to an additional homestead is a bounty, then under the act of 1890, above quoted, a notary public is authorized to administer the oath, as the laws of the state of Arkansas, where he resided, vest him with that power.

The demurrer must therefore be overruled.