## CLARK *v.* WELCH.

1. PUBLIC LANDS — ADDITIONAL HOMESTEAD — SOLDIER'S RIGHT — ASSIGNABILITY.
   Soldier's rights of additional homestead entry were assignable before entry.

2. EXECUTORS AND ADMINISTRATORS—ASSETS — OWNERSHIP — EVIDENCE.
   In an action against the distributees of the estate of the original owner of a certificate of additional homestead right to recover money paid to the administratrix for the assignment of such right, evidence examined, and *held*, to preponderate in favor of a finding that the certificate had been transferred

prior to the original owner's death, and that nothing passed to plaintiff by his purchase.

3. POWERS — PUBLIC LANDS — RIGHT TO LOCATE — POWER WITH INTEREST—REVOCATION.

A power of attorney, given at the time of transferring for value a soldier's additional homestead right, empowering the transferee or anyone whom he might name to locate the land in the soldier's name, is a power coupled with an interest, and is not revoked by the soldier's death.

Case made from Bay; Collins, J. Submitted October 15, 1908. (Docket No. 90.) Decided November 2, 1908.

Assumpsit by Daniel N. Clark against Henry Welch and Adelia Hurley for money had and received. There was judgment for defendants, and plaintiff brings error. Reversed, and judgment entered for plaintiff.

*Daniel N. Clark*, in pro. per.

*Gilbert W. Hand*, for appellees.

On November 20, 1878, the commissioner of the general land office issued a certificate showing one Levi Welch to be entitled to make an additional homestead entry of 80 acres of land. The certificate, to which was attached such other papers before the department as pertained to the matter, was transmitted to William J. Johnston, the attorney for Welch, who lived in Washington, D. C., and who filed the application. The certificate has never been used to locate land, and, as appears from the records of the land office, is still outstanding. Levi Welch died March 16, 1904, and plaintiff, a resident of Washington, D. C., purchased from the administratrix of his estate, for the sum of $200, an assignment of the right evidenced by the said certificate. This assignment was made upon the order of the probate court, and recites that said Welch never exercised or had the benefit of his said right during his lifetime, and never sold, assigned, or transferred the same to any person, and that the title thereto remained in

him at the time of his death unimpaired. What became of the certificate is not known. There is no testimony tending to prove that it ever came into the hands of Welch. It was the usual practice, prior to the act of congress of August 18, 1894, of attorneys and dealers in such rights to acquire from the beneficiaries two powers of attorney, one to locate the land in the name of the beneficiary, the other to sell land so located; these powers being executed in blank as to all variable facts. These passed from hand to hand until they reached the person who actually located the land, who inserted his name as attorney in fact, and filled in the necessary blanks and description of the land located. In the agreed statement of facts upon which this case was submitted at the circuit is the following:

"The parties hereto presume that said William J. Johnston obtained two powers, as above described, from said Levi Welch, although there is no record, either in the general land office or elsewhere, showing that said powers were actually given either to Johnston, or to any other person or persons. * * *

"From March 3, 1873, the date of the passage of section 2306, U. S. Rev. Stat. (17 Stat. at Large, p. 605), until the date of the passage of the act of August 18, 1894 (28 Stat. at Large, p. 397), it was the rule and regulation of the department of the interior of the United States to require the filing of an affidavit by the soldier in all locations of the additional right, whether made in person or by attorney in fact, that the additional entry was made for his own exclusive use and benefit, and not directly or indirectly for the use or benefit of any other person or persons whomsoever. * * *

"From and after the date of the act of March 3, 1873 (now section 2306, Revised Statutes of the United States), until August 5, 1874, all applications for soldiers' additional homestead entries were required to be made in person at the local land offices, but by circular of that date (August 5, 1874; 1 Copp's Landowner, p. 92) applicants were relieved from going to the local land offices to make entry, and it was provided that the affidavits might be made before the clerk of any court of record for the county in which applicant resided, and transmitted, with the application and fee, by mail or through an attorney to

the proper land office. By departmental decision of May 17, 1876 (3 Copp's Landowner, p. 22), the instructions contained in the above-mentioned circular were revoked, because it was found that said regulations led to many abuses. In accordance therewith the circular of May 22, 1876 (3 Copp's Landowner, p. 52), was issued, requiring soldiers' additional entries to be made in person at the local land offices. These regulations were made applicable to applications then pending, but on July 10, 1876 (3 Copp's Landowner, p. 52), the department modified the before-mentioned decision so as to make the said regulations apply only to entries made subsequent to May 17, 1876. The department on March 10, 1877 (4 Copp's Landowner, p. 37), further modified the circular of May 22, 1876, so as to permit entries to be made in the following cases, viz.:

"(1) Those presented prior to March 20, 1876, which were rejected, but kept alive by appeal.

"(2) Those in the hands of agents or attorneys at the date of promulgation of the circular of May 22, 1876, which, under said instructions, were not recognized.

"(3) To allow entries to be made by the agents or attorneys of the party originally entitled to entry, after the right shall be certified to by the commissioner of the general land office. * * *

"Under the act of Congress of August 18, 1894 (28 Stat. at Large, p. 397), and circular of the secretary of the interior of the United States of October 16, 1894 (19 Land Dec. Dept. Int. 302), issued in pursuance thereto, any person holding any certificate therefor issued of a soldier's additional right of entry by virtue of any bona fide transfer or sale of such certificate such person, upon presentation of proof that he purchased such certificate, and evidence of the bona fide transfer, became entitled to the recertifications in his own name of said right.

" That by decision of the honorable secretary of the interior in the case of Williford Jenkins (29 Land Dec. Dept. Int. 510) any person furnishing evidence of the loss or the destruction of any certificate of additional homestead right is entitled to the reissuance of said certificate. * * *

" Provided that no right, title, or interest in and to such additional homestead right existed in the estate of the said Levi Welch at the date of the said assignment, and that no such right, title, or interest, passed thereby to plaintiff under the foregoing agreed facts in said cause."

Plaintiff applied for a new certification—recertification —of the right of Welch, which, after examination, was denied. From the letter of the commissioner, the following is taken:

"While this office is desirous of aiding and assisting a soldier or his assigns in establishing his right, it cannot, in view of the fact that such rights were assignable, and may have been assigned, and now held by an innocent purchaser for value, direct that a new certificate issue except upon due, positive, and conclusive proof that the certificate evidencing the right has been lost or destroyed, and that the party who now seeks issuance of a new certificate is the lawful owner of such right. * * * The burden is upon the party asserting the additional right to clearly establish, not only the validity thereof, but his title thereto, and, until this duty has been fully performed, the department would be unwarranted in recognizing a claim based thereon. * * * As you have failed to present such evidence in this case, your application for the reissuance of the certificate must be, and the same is hereby, denied, subject to your right of appeal."

It was also further agreed by the parties:

"Said defendants were the active parties in procuring the purchase by plaintiff of said alleged right; that said Adelia Hurley and Henry Welch severally represented to plaintiff that such right existed in their father's estate, and the same was a valuable asset thereof."

This suit is brought to recover from the distributees of the estate of Welch the money paid to the administratrix of said estate for said assignment, and it was agreed that they are liable to refund the money,—

"Provided that no right, title, or interest in and to such additional homestead right existed in the estate of the said Levi Welch at the date of the said assignment, and that no such right, title, or interest passed thereby to plaintiff under the foregoing agreed facts in said cause."

OSTRANDER, J. (*after stating the facts*). As we construe the stipulation of the parties, and this construction is agreeable with the arguments made by counsel, we

are not called upon to determine whether plaintiff pur-
chased an interest or title which the land department
would recognize, but only whether, upon the evidence
presented, it appears as matter of law that the estate of
Welch was owner of the right to locate ¦80 acres of the
public lands.   That Levi Welch owned this right in 1878,
and that a certificate to that effect was duly issued to
him, which certificate has never been used for the pur-
pose of locating lands, are facts established by the record
of the department.   That the right was assignable be-
fore entry is established by *Webster* v. *Luther*, 163 U.
S. 331, the practice of the land department, based upon
the idea that the right of entry given by the statute was
personal and not assignable notwithstanding.   Is there
evidence of the assignment by Welch of this right?   The
parties have in the statement of agreed facts presumed
that Levi Welch executed in blank two written instru-
ments, one of them conferring upon an attorney authority
to locate the land in the name of the principal, the other,
as we understand the record, similar in its terms to the
instrument considered in *Webster* v. *Luther*, supra.   We
are led, by the arguments made and from the opinion filed
by the learned trial judge, to believe that counsel have as-
sumed the fact *presumed* in the statement of facts, and
that this court is expected to proceed upon such assump-
tion.   There is some other evidence tending to support
such finding of fact.   It was the usual course in such
matters.   The certificate itself appears to have never
come into the ·possession of Welch.   He lived for 26
years after the certification of his right, during which
time he made no effort to locate the land or to dispose of
the right to do so.   The effect of the fact last stated as
evidence opposed to his title is diminished by the other
fact that no one else has used the certificate for the pur-
pose of locating land.   As we are of opinion that, if the
instruments already referred to and described were exe-
cuted, they amounted to an assignment of the right of
Welch, we find a preponderance of evidence opposed to

the idea that he died possessed of such right. The learned trial judge was of opinion that it was held in *Midway Company* v. *Eaton*, 183 U. S. 602, "that similar powers could not be shown to constitute an assignment." We do not so read the opinion of the court in that case. What was decided was that, although by the act of congress the Sioux half-breed certificates for scrip were made nonassignable, a valid location of land could be made by virtue of such certificates by an attorney in fact of the Indian, and that he could, either before or after the location was made, enter into an agreement to secure or convey the title. Id., 183 U. S. 618. In *Webster* v. *Luther*, supra, it was expressly found that the act of congress did not make the right to locate an additional homestead nonassignable.

With respect to the instrument supposed to have been executed by Levi Welch, the court below said:

"Presuming that the attorney in the powers during the time they were in force up to Welch's death had them in his possession ready to be used, nevertheless he had no interest in the land to be entered and only had an interest in that which he (the attorney) was to derive from the use of the powers. It is a question, therefore, whether a power coupled with an interest means an interest in the thing itself, or in that which is to be derived by the use of the power. The case of *Hunt* v. *Rousmanier's Adm'r*, 8 Wheat. (U. S.) 201, is conclusive in the defendant's favor. The attorney had no interest, except as he might derive such from the use of the powers. He had no interest in the land to be conveyed. Clearly death revoked the powers."

The instrument contained the clauses:

"And my said attorney is hereby authorized to sell said lands, or my interest therein, and to make any contract in relation thereto which I might make if present, and to receive for his own use and benefit any moneys or other property the proceeds of the sale of said lands, or any interest therein, or arising from any contract in relation thereto, or received or recovered for any injury thereto, and I hereby release to my said attorney all claim to any

of the proceeds of any such sale, lease, contract, or damages.    And I further authorize my said attorney to appoint a substitute or substitutes to perform any of the foregoing powers, hereby ratifying and confirming all that my said attorney or his substitute may lawfully do or cause to be done by virtue of these presents "—or similar ones.

It is true that the location would be made in the name of Levi Welch and that the patent for the land would issue in his name.    It is also true that until the location of the land the bare right to locate it was transferable.    Assuming this right to have been transferred for value, the giving to the transferee, or to any person whom he might name, a power to make such transfer effectual, is not a revocable act.    What is imported is a present sale and transfer of the right and of all and every benefit which may be thereafter derived from said right.

We are of opinion that the judgment should be reversed, and upon the agreed facts one should be entered here for plaintiff, with costs of both courts.

GRANT, C. J., and HOOKER, MOORE, and McALVAY. JJ., concurred.