UNITED STATES EX REL WALCOTT v. BALLINGER.

---

PUBLIC LANDS; ADDITIONAL HOMESTEAD ENTRIES; LACHES; MANDAMUS.

An assignment by a soldier of his right under sec. 2306, Rev. Stat., U. S. Comp. Stat. 1901, p. 1414, to make an additional homestead entry of public land, which expressly designates the land to be entered, does not give the assignee the right, so far as the government is concerned, to locate other public land than that so designated; and where he is erroneously denied by the Land Office the right to make an entry of the land designated, and he acquiesces in such action, his transferee cannot, by mandamus, thirty years afterwards, compel the Secretary of the Interior to permit him to make entry of other public land under the assignment.

No. 2122.   Submitted April 22, 1910.   Decided June 1, 1910.

HEARING on an appeal by the relator from a judgment of the Supreme Court overruling his demurrer to a return to a rule to show cause, issued on his petition for the writ of mandamus to compel the Secretary of the Interior to permit him to make a soldier's additional entry of public land, and as the relator elected to stand on his demurrer, discharging the rule and dismissing the petition.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

The appellant, Francis M. Walcott, relator below, petitioned the supreme court of the District of Columbia for a writ of mandamus to direct the appellee, Richard A. Ballinger, as Secretary of the Interior of the United States, to allow him to make a soldier's additional entry of 40 acres of public land in the Valentine land district in the State of Nebraska.

It appears that one Shadrach Duer, by reason of military service in the Civil War, was entitled, under the provisions of sec. 2306, U. S. Rev. Stat. U. S. Comp. Stat. 1901, p. 1414, to make an additional homestead entry for 80 acres of public land.    On May 13, 1875, Duer, for a consideration of $100, executed to one Charles D. Gilmore a power of attorney, with power of substitution, authorizing him to locate the additional homestead right, and to sell the land located.    In connection with the power of attorney, Duer executed in blank and delivered the necessary entry papers, so that Gilmore might fill in a description of the land he desired to enter, as well as other essential matters dependent upon the location of the land.

On September 20, 1875, before anything had been done under the Gilmore power of attorney, Duer exercised his right by entering 40 acres of public land in the Ironton land district in the State of Missouri.    In due course a patent was issued by the government to Duer.    It is Duer's right to make entry for the remaining 40 acres that is involved in this controversy.

On October 7, 1875, one Chipman, acting under the power of attorney to Gilmore, entered in Duer's name a tract of 80 acres of land in the Sacramento land district in the State of Cali-

fornia. When the entry was forwarded to the General Land Office from the Sacramento office, it was disallowed, and the entry canceled under a ruling of the Secretary of the Interior that one entry under a soldier's additional right exhausted his privilege. Duer having made entry for 40 acres in Missouri, it was held that no rights attached under the Chipman entry. The Commissioner of the General Land Office in disallowing Chipman's entry allowed him sixty days in which to appeal therefrom, but no appeal was taken. Pursuant to the act of Congress of June 16, 1880 (21 Stat. at L. 287, chap. 244, U. S. Comp. Stat. 1901, p. 1415), authorizing the repayment of fees, purchase money, and commissions paid on illegal and void entries, Chipman, on February 26, 1882, filed an application for repayment of the fees and commissions paid on account of his California entry. On December 12, following, his claim was paid in full.

On September 7, 1901, Duer assigned the balance of his additional right to John King. King located under his assignment 40 acres of land in the Haley land district in the State of Idaho, for which he received a patent December 31, 1903.

On April 3, 1907, the relator, Walcott, as the holder by mesne assignments from Chipman, applied at the United States Land Office at Valentine, Nebraska, to enter 80 acres of land, which application was, on October 26, 1908, rejected. On April 21, following, Walcott relinquished his application to one half of the land described, claiming a right under his assignment to the remaining 40 acres of the additional homestead right of Duer. Inasmuch as Duer's additional homestead right, to the full extent of 80 acres allowed him by law, had been exhausted prior to the application of the relator, relator's entire entry was rejected.

The respondent answered, admitting the facts as above stated, but alleging, by way of affirmative defense, that Chipman, by applying for and receiving a refund of his fees and commissions, and by his failure to object to the allowance of the Duer and King entries, assented to and acquiesced in the Department's action in refusing his California entry; that neither

Chipman or anyone on his behalf took any steps to assert his rights for a period of more than thirty years; that Duer's personal entry had the effect of revoking the power of attorney to Gilmore; that Chipman, by his application for refund of his fees and commissions, gave notice to the Department of his acquiescence in, and recognition of, Duer's right to revoke the power of attorney to Gilmore, and that, by his action, Chipman abandoned and disclaimed any rights under the Gilmore power of attorney.

The answer also denies that Chipman had no notice of the application filed by King in 1901, or that respondent was chargeable with notice of the claim of relator or his assignor at the time of the entry of King and the issuance of a patent to him; and that, on the contrary, the only notice conveyed by the records of the Land Department was, in effect, a revocation of the Gilmore power of attorney by Duer and a disclaimer of any rights thereunder by Chipman. The answer further alleges: "That, in and by said application of N. P. Chipman for, and the acceptance by him of, the return of fees and commissions, as aforesaid, and in and by the failure to object to the entries of said Shadrach Duer and said John King, as hereinabove set forth, and in and by the failure of said N. P. Chipman, or any other person for him or on his behalf or as his successor in interest, to take any steps whatsoever looking to an assertion of any rights or supposed rights held by him or them, or by virtue of said power of attorney from Shadrach Duer to said N. P. Chipman, said N. P. Chipman did abandon and relinquish all claim to any rights whatsoever in or to the additional homestead right of said Shadrach Duer, either under or by virtue of the said power of attorney to him, the said N. P. Chipman, or otherwise, and that the officers of the Department of the Interior of the United States did act upon the said application of the said John King, in reliance upon the said assent and acquiescence of the said N. P. Chipman, and abandonment by him, as aforesaid."

The relator demurred generally to the answer, and traversed the allegation that the application and entry of King were such

matters of public record as would charge relator with notice. On hearing the demurrer was overruled, and, petitioner electing to stand upon his demurrer, judgment was rendered discharging the rule to show cause and dismissing the petition. From this judgment, the cause comes here on appeal.

*Mr. Charles A. Keigwin* and *Mr. F. W. McReynolds* for the appellant.

*Mr. Oscar Lawler,* Assistant Attorney General, *Mr. F. W. Clements,* First Assistant Attorney, and *Mr. S. W. Williams,* Assistant Attorney, Interior Department, for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Under the provisions of sec. 2304, U. S. Rev. Stat. U. S. Comp. Stat. 1901, p. 1413, every soldier who served in the military service of the United States during the War of the Rebellion is entitled to enter a homestead of 160 acres to be selected from the public lands of the United States, and to have six months after making such entry to make settlement thereon. Sec. 2305 provides that the time the entryman served in the Army shall be deducted from the period of settlement required under the general homestead law to perfect title, providing that in all cases there must be actual settlement on the land for a period of at least one year. Sec. 2306, under which this action arose, provides as follows: "Every person entitled, under the provisions of sec. 2304, to enter a homestead, who may have heretofore entered under the homestead laws, a quantity of land less than 160 acres, shall be permitted to enter so much land as, when added to the quantity previously entered, shall not exceed 160 acres."

It was originally held by the Secretary of the Interior that a soldier's additional right under this law was not assignable, but must be exercised by the soldier himself, or by another acting on his behalf under a power of attorney. In the case of *Webster* v. *Luther,* 163 U. S. 331, 41 L. ed. 179, 16 Sup.

Ct. Rep. 963, the right was held to be a property right subject to sale and assignment. It was also originally held by the Department that this additional right was exhausted by a single entry, whether the soldier had taken his full quota of 160 acres or not. This decision was overruled by the Department in the case of *Re Darling,* 26 Land Dec. 192. It was there held that the additional right is not exhausted until the full quantity of land has been entered. It should be remembered that, at the time of the Missouri entry by Duer and the California entry by Chipman, the Department was adhering to its original position on both of these questions.

The power of attorney from Duer to Gilmore must be treated as an assignment only of Duer's additional right to make the California entry. While the instrument granted a power of substitution, it accorded to Gilmore only the right to substitute another party who could, in turn, exercise the right conferred on him by the terms of the power of attorney. But what was that right? It was limited to an entry in Duer's name of the land specifically described in the instrument,—the California entry subsequently sought to be made by Chipman. The material parts of the power of attorney are as follows: "Know all men by these presents,—That we Shadrach Duer, and Sarah L., his wife, have made, constituted, and appointed, and by these presents do make, constitute, and appoint, Charles D. Gilmore, of Washington, District of Columbia, my true and lawful attorney, for me, and in my name, place, and stead, to locate and enter at the United States Land Office at Sacramento, in the State of California, my "additional homestead," under the provisions of the act of Congress approved June 8, 1872, as amended by the act of Congress approved March 3d, 1873, being for the following described public land, to wit: Lot 1 of N. W. 1-4 Sec. 4 Tp. 16 N. R. 17 E. M. D. M., and for me, in my name or behalf, to enter into and upon the said described premises, and take and hold possession thereof, with the appurtenances, with the same authority, powers, and rights that I might or could do in person. Hereby giving and granting unto my said attorney full power and authority to grant, bargain, and sell the same, the

said described premises, or any part or parcel thereof, or any interest therein, for such sum or prices, and on such terms, as to him shall seem meet, and, for me and in my name, to make, execute, acknowledge, and deliver good and sufficient deeds and conveyances for the same in fee simple, either with or without covenants and warranty. Hereby covenanting to and with my said attorney, his heirs or assigns, that I shall and will, at the request, and at the charge of such attorney or assigns, from time to time, and at all times hereafter, execute, acknowledge, and deliver, or cause to be executed, acknowledged, and delivered, all and every such further and other acts, conveyances, and assurances in the law, for the better assuring to my said attorney or his assigns, the said described premises, as by my said attorney, his assigns, his or their counsel, learned in the law, shall reasonably advise and require. Giving and granting unto my said attorney full power and authority to appoint a substitute, or substitutes to perform any and all the intendments of these letters. And in consideration of the sum of $100, lawful money, to me in hand paid by my said attorney, at and before the ensealing and delivery hereof, the receipt whereof is hereby acknowledged, this power of attorney is made irrevocable, and I do hereby release unto my said attorney all my claim to any of the proceeds of any sale, lease, or contract that shall accrue by reason of the conveyance of the said premises. Hereby ratifying and confirming whatsoever my said attorney or his substitute may do in the premises by virtue hereof."

A mere glance at this instrument discloses its purpose. It granted Gilmore or his assignee, whom he might substitute, the right to enter in Duer's name the particular tract of land therein described, and no other. There is no doubt but that it constituted a special assignment of Duer's right to that extent. It cannot, however, be distorted into an authority to Gilmore or the relator, as his assignee by mesne conveyance, to enter the land here in question. It was not executed by Duer for that purpose, and the rights of relator at most must be measured by the rights of Gilmore, whose rights, so far as the land was

concerned, were limited by the subsequent action of his assignee Chipman to the California entry.

This presents the question of whether or not Chipman lost all his rights by the failure to pursue his California entry. We think he did. Undoubtedly, by his delay in making the entry, and his failure to give the government notice of the Duer power of attorney, he lost his right to assert his claim against the government for more than 40 acres. As to the remaining 40 acres, he was estopped by Duer's Missouri entry. *Re Walker,* 25 Land Dec. 119. What remedy he may have had against Duer to impress the Missouri land with a trust in his favor, had he proceeded with diligence, it is unnecessary to decide. That he was estopped to that extent against the government is here conceded.

It is the right of the relator to enter 40 acres of land in lieu of that which was abandoned by Chipman, with which we are here concerned. It is clear that Chipman, by failing to pursue the remedy provided when his entry was refused by the Commissioner of the General Land Office, lost his rights under the power of attorney. If he had availed himself of the right afforded him, and of which he had notice, to appeal to the Secretary of the Interior, and had again been refused the right to make the entry, the same remedy now pursued by relator was open to him to test the correctness of the Department's ruling. The subsequent holdings of the courts disclose that his contention would have been upheld. *Webster* v. *Luther,* 163 U. S. 331, 41 L. ed. 179, 16 Sup. Ct. Rep. 963.

In that case the court held a general power of attorney to constitute an assignment of the additional homestead right. The power of attorney, however, was very different in its terms from the one before us. The court in its opinion stated its conditions as follows: "The defendants read in evidence a power of attorney dated April 28, 1880, and duly recorded April 8, 1887, from Mary A. Robertson to James A. Boggs. This instrument authorized and empowered Boggs, as attorney for his principal, 'to sell, upon such terms as to him shall seem meet,' any lands which the principal then owned, either in law or

equity, and obtained by her as 'an additional homestead,' under the provisions of sec. 2306 of the Revised Statutes; to sell any such land as she might thereafter acquire under said acts; to receive the purchase money or other consideration therefor, and to deliver in the name .of the principal such deeds or other assurance in the law therefor as to the agent seem meet and necessary.    It contained these additional clauses: 'And my said attorney is hereby authorized to sell said lands or my interest therein, and to ·make any contract in relation thereto which I might make if present, and to receive for his own use and benefit any moneys or other property the proceeds of the sale of said lands, or any interest therein, or arising from any contract in relation thereto, or received or recovered for any injury thereto, · and I hereby release to my said attorney all claim to any of the proceeds of any such sale, lease, contract, or damages.    And I further authorize my said attorney to appoint a substitute or substitutes to perform any of the foregoing powers, hereby ratifying and confirming all that my said attorney or his substitute may lawfully do or cause to be done by virtue of these presents.' "    It will be observed that this assignment was general, and embraced any land that might .thereafter be acquired under the soldier's right.    In the present case the power of attorney had relation to the California entry alone, and, under the most liberal construction, would constitute an assignment of Duer's additional right for the purpose of making that entry, and no other.

The sole contention of counsel for relator is that Duer, by his power of attorney to Gilmore, absolutely parted with title to his "additional right" and that the power of attorney was, in terms, coupled with an interest, and, therefore, irrevocable, with power of substitution.    Counsel's position with respect to this assign- ment is concisely stated in ·their brief, as follows: "Duer's power of attorney given to Gilmore, in 1875, * * * purports to pro- ceed upon a valuable consideration, and is in terms irrevocable. It is not a mere authority to make entry on behalf of the donor, and in his name to sell the entered land.    By express words, the' holder of the power is authorized 'to enter into and upon

the said premises, and take and hold possession thereof; in the same manner and with the same 'authority, powers, and rights' that the donor would or might have.    Still further, the donee is empowered to sell all or any part of the land to be entered, or any interest therein, 'for such sum or prices, and on such terms, as to him shall seem meet,' and to give 'good and sufficient deeds and conveyances for the same in fee simple,' which conveyances the donor binds himself to confirm by whatever further assurances may be found requisite.    Finally, the donor releases to the attorney 'all my claim to all of the proceeds of any sale, lease, or contract that shall accrue by reason of the conveyance of the said premises.'"    With this contention we find no reason to disagree, but counsel are not content to confine the alleged rights within the limits of the California entry, to which the power of attorney alone relates.    All the powers conferred upon Chipman, as the assignee of Gilmore, relate to the land therein described.    It is undoubtedly true that as to that land the power of attorney carried all the powers claimed for it, but a vastly different right is here asserted.    Nothing appears on the face of this power of attorney or the record, to indicate that it was the intention of Duer to part with anything but his additional right to enter the land described in the power of attorney.    Our attention has not been called to any case where it has been held that, in a power of attorney describing the land to be entered, the power of substituting other lands exists, in the absence of further authority from the principal. The only interest coupled with the power of attorney before us was the right of Gilmore, or a substituted assignee, to make the California entry, and enjoy the rights accruing therefrom as fully as the same might have been enjoyed by Duer, had he made the entry.

But it may be insisted that Chipman's right was defeated by Duer's action.    Granting it to be true as to the Missouri entry, that matter is not - here involved.    As to the remaining 40 acres, Chipman, by the power of attorney, had a remedy.    He could have called upon Duer for the execution of another set of entry papers, and, if necessary, an additional power of attorney.

This he failed to do.   Years elapsed before Duer assigned the right to King.   Chipman still slept upon his rights, without attempting to assert them either against Duer or the government.   He also had a plain legal remedy when his entry was refused by the Commissioner of the General Land Office.   He elected to abandon it, and applied for and received from the government his fees and commissions expended, and, we think, in view of his failure to pursue either of the remedies open to him, he cannot be heard to complain, or to assert a right to another entry, at least, in the face of the subsequent assignment of Duer to King.

It therefore appears that, when Duer's application was filed by Chipman, and refused because of the former Duer entry, Chipman could have proceeded against Duer for recovery of the Missouri land; he could have called upon Duer for the execution of another set of entry papers for the remaining 40 acres; or he could have appealed from the decision refusing the California entry, and thus have protected his right to at least the remaining 40 acres.   He abandoned all these rights, and, over a quarter of a century later, attempts to accomplish through an assignment to relator that which was lost to him.   Under the limitations of the power of attorney in question, the government was only required to take notice of Chipman's rights until the expiration of the time granted him to take his appeal from the decision of the Land Office.   Chipman's remedy thereafter, if any existed, was against Duer,—a matter with which we are not here concerned.   His right to assert any claim against the government under the present power of attorney was exhausted. In view of Chipman's action, the government was justified in treating the right here in question as residing exclusively in Duer, until someone appeared to claim the right armed with other authority than the Gilmore power of attorney.   As suggested, Chipman might have required Duer to execute a new power of attorney that would have, at least, enabled him to enter 40 acres of the rejected California entry, and the government would have been required to accept it; but this was not done. In the meantime, King appeared, armed with an assignment

from Duer, which was properly accepted by the government. It follows that relator's right must be measured by those of Chipman. He can rise no higher than his assignor.

It is unnecessary to consider other serious questions advanced by counsel for the government affecting the legal status of relator in this action, since the points discussed fully dispose of the appeal. The judgment is affirmed, with costs, and it is so ordered. *Affirmed.*

Mr. Justice ANDERSON, of the supreme court of the District of Columbia, sat with the court in the hearing and determination of this appeal, in the absence of Mr. Chief Justice SHEPARD.