CONNOLE v. NORFOLK & W. RY. CO.

(District Court, S. D. Ohio, E. D. September 2, 1914.)

No. 1758.

**1. COMMERCE (§ 27*)—INTERSTATE AND INTRASTATE COMMERCE.**

An interstate carrier may, through the same employé or employés, engage at a given time in intrastate commerce and at another time in interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. § 27.*]

**2. EVIDENCE (§ 33*)—JUDICIAL NOTICE—LEGISLATIVE JOURNALS.**

A court in interpreting a statute may take judicial notice of legislative journals.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 47; Dec. Dig. § 33.*]

**3. STATUTES (§ 217*)—AMENDMENT—CONSTRUCTION.**

Where during the passage of a statute words of enlargement were stricken out by amendment and words of limitation inserted in their stead, a court in construing the statute as finally passed, would hold that the legislative intent was to restrict its application.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 293; Dec. Dig. § 217.*]

**4. MASTER AND SERVANT (§ 250¾, New, vol. 16 Key-No. Series)—INJURY TO SERVANT—WORKMEN'S COMPENSATION ACT—CONSTRUCTION—INTERSTATE EMPLOYÉS.**

Ohio Workmen's Compensation Act (Act March 14, 1913, 103 Ohio Laws, p. 90) § 51, provides that the act shall apply to employers and their employés engaged in intrastate and also in interstate and foreign commerce, for whom a rule of liability or method of compensation has been or may be established by the Congress of the United States only to the extent that their mutual connection with the intrastate work may and shall be clearly separable and distinguishable from the interstate and foreign commerce, and then only when such employer and any of his workmen, working only within the state with the approval of the State Liability Board of Awards and so far as not forbidden by any act of Congress, voluntarily accept the provisions of the act. *Held* that the act does not apply to employers and their employés engaged exclusively in interstate commerce, but does apply to those engaged in both interstate and intrastate commerce where their mutual connection with *intrastate* work is separable from interstate and foreign commerce when, and only when, they elect to be governed by the act.

[What law governs master's liability for injuries to servant, see note to Mexican Cent. Ry. Co. v. Jones, 48 C. C. A. 232.]

At Law. Action by T. J. Connole against the Norfolk & Western Railway Company. On motion to strike out petition. Sustained.

Smith W. Bennett, of Columbus, Ohio, for plaintiff.

James I. Boulger, of Chillicothe, Ohio, for State Atty. Gen., as amicus curiæ.

Bannon & Bannon, of Portsmouth, Ohio, and Henry J. Booth, of Columbus, Ohio, for defendant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SATER, District Judge. The defendant by its motion seeks an interpretation of section 51 of the Ohio Workmen's Compensation Act (103 Ohio L., 72, 90) a copy of which is set forth in the margin.[1]

[1] Plaintiff says that the averments in the petition do not admit of any construction other than that the defendant was entirely occupied at the time of his injury in purely intrastate commerce, but as to this counsel do not agree. An interstate carrier may, through the same employé or employés, engage at a given time in intrastate commerce, and at another in interstate commerce. Illinois Cent. R. Co. v. Behrens, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051. It will answer present purposes best, and probably conform to the true meaning of the petition, to treat it as charging that both he and the defendant were, as regards the particular service he was performing at the time he received his injury, engaged in intrastate commerce, although defendant is also an interstate carrier and has at all times engaged in interstate business. The defendant's position is that, even if both were engaged in purely intrastate business at the time plaintiff was injured, the defendant, being also an interstate carrier engaged in interstate commerce, is not amenable to the provisions of the Ohio act unless it and some, at least, of its workmen working only in this state, with the approval of the State Liability Board of Awards, had voluntarily accepted the provisions of such act by filing their written acceptances thereof with such board, and unless such acceptances had also been approved by such board; and that in that event the defendant would be subject to the provisions of the act for the period only for which the premiums called for by the act had been paid. Because there is no averment in the petition that the defendant and any of its workmen had thus accepted and become bound by the provisions of the act, the defendant moves to strike from the petition the following paragraph:

"Plaintiff further says that at said time said defendant was as to this plaintiff an employer as defined in and subject to the provisions of an act of the General Assembly of the state of Ohio, duly passed and approved March 13 (14), 1912, and entitled: 'An act to further define the powers, duties and jurisdiction of the *State Liability Board of Awards* with reference to the collection, maintenance and disbursement of the state insurance fund for the benefit of injured, and the dependents of killed employés and requiring contribution thereto by employers, and to repeal sections [here follows a list of the sections] of the General Code.' And said defendant had not at said time, and has not now, complied with any of the provisions of said act."

---

[1] Section 51. The provisions of this act shall apply to employers and their employés engaged in intrastate and also in interstate and foreign commerce, for whom a rule of liability or method of compensation has been or may be established by the Congress of the United States, only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce, and then only when such employer and any of his workmen working only in this state, with the approval of the state liability board of awards, and so far as not forbidden by any act of Congress, voluntarily accept the provisions of this act by filing written acceptances, which, when filed with and approved by the board, shall subject the acceptors irrevocably to the provisions of this act to all intents and purposes as if they had been originally included in its terms, during the period or periods for which the premiums herein provided have been paid. Payment of premium shall be on the basis of the pay roll of the workmen who accept as aforesaid.

[2, 3] When interpreting a statute a court may take judicial notice of legislative journals. Endlich, Interpretation of Statutes, § 33; Blake v. National Banks, 23 Wall. 307, 23 L. Ed. 119; United States v. Delaware & Hudson Co., 213 U. S. 366, 414, 29 Sup. Ct. 527, 53 L. Ed. 836; State v. McCollister, 11 Ohio, 46, 55; The Saratoga (D. C.) 9 Fed. 322, 330; Cooper v. Richmond & D. R. Co. (C. C.) 42 Fed. 697, 700, 8 L. R. A. 366; American Net & Twine Co. v. Worthington, 141 U. S. 468, 474, 12 Sup. Ct. 55, 35 L. Ed. 821; Bate Refrigerating Co. v. Sulzberger, 157 U. S. 1, 37, 15 Sup. Ct. 508, 39 L. Ed. 601; Knowlton v. Moore, 178 U. S. 41, 77, 20 Sup. Ct. 747, 44 L. Ed. 969; Chesapeake & Potomac Telephone Co. v. Manning, 186 U. S. 238, 245, 22 Sup. Ct. 881, 46 L. Ed. 1144; Division of Howard County, 15 Kan. 195; Dr. J. L. Stephens Co. v. United States, 203 Fed. 817, 823, 122 C. C. A. 135. In the last-named case it appeared that when the bill which became the Pure Food and Drugs Law was under consideration, an amendment was offered to narrow one of its broad provisions. The amendment was defeated. It was held that such action on the part of Congress is practically conclusive that it intended that the broad provision should remain unmodified, and that the narrower interpretation, which counsel sought and which the amendment contemplated, could not prevail. If the refusal of a legislative body to narrow comprehensive language shows an intention to enact a comprehensive statute, then the converse of that proposition is also true, and if it appears that by amendment words of enlargement are stricken out and words of limitation inserted in their stead, the court should hold that the legislative intent was to restrict. An instructive case enforcing the effect of a restrictive amendment to a bill on its passage is that of State v. McCollister, supra.

[4] The earlier portions of section 51 make the act applicable to employers and employés engaged in interstate or foreign commerce (notwithstanding any federal act affecting them) to the extent only that both are engaged in intrastate work alone at the time of the happening of an injury to an employé; that is to say, the work must be clearly separable and distinguishable from interstate or foreign commerce to bring the employer and its injured employé within the terms of the statute. After thus making the act applicable to such persons, the section further provides:

"And then only [shall the provisions of the act apply to them] when such employer and any of his workmen working only in this state, with the approval of the state liability board of awards, and so far as not forbidden by the act of Congress, voluntarily accept the provisions of this act by filing written acceptances, which, when filed with and approved by the board shall subject the acceptors irrevocably to the provisions of this act to all intents and purposes as if they had been originally included within its terms, during the period or periods for which the premiums herein provided have been paid."

The section, with certain changes, only one of which affects anything here under consideration, is the same as section 6604—18 of the Washington statute (Remington & Ballinger's Anno. Codes, Supp. 1913). The only change that need be noted here is the substitution

in the Ohio act of the words "and then only when" for the words "except that any such," occurring in that of Washington. The words in the Washington act enlarge the classes of persons to whom the act may apply, whereas the Ohio act restricts such classes. The one extends the application of the statute and the other limits it. The Washington statute is plain and intelligible, but does not appear to have been construed. After the bill which became the Workmen's Compensation Act was introduced in the General Assembly (section 51 being then the same, in so far as it need here be considered, as section 6604—18, Washington statute), an amendment was offered in the Senate to strike out the words, "except that any such," and to insert in lieu thereof the words, "and then only when." The motion prevailed, and the bill as thus amended became the present law. The amendment was probably offered, as counsel suggest, to avoid any objection that might arise under the commerce clause of the federal Constitution and federal legislation enacted in pursuance of such authority. The author of the amendment may have misapprehended the state of the law, but this may not be presumed. 8 Cyc. 804. On the contrary, the court must presume that the Legislature acted advisedly and with full knowledge of the situation, and must accept its action as that of the body having full power to act and acting only when it had acquired sufficient information to justify its action. Chesapeake & Potomac Telephone Co. v. Manning, 186 U. S. 245, 22 Sup. Ct. 881, 46 L. Ed. 1144, supra.

In view of the language found in other portions of the statute indicating an intent to make the law applicable to all workmen who are not engaged in interstate commerce, the court is in effect asked to interpret the section as if it were phrased as it appeared in the original bill. In Knowlton v. Moore, 178 U. S. 77, 20 Sup. Ct. 747, 44 L. Ed. 969, supra, it is said:

"We are * * * bound to give heed to the rule that where a particular construction of a statute will occasion great inconvenience or produce inequality and injustice, that view is to be avoided if another and more reasonable interpretation is present in the statute."

It is urged that, if section 51 be interpreted according to its plain language, inequality and injustice will result in that the law is then rendered inapplicable to persons employed by an interstate carrier (unless the acceptances and approval named in such section be first had), and probably offends the constitutional provision against class legislation, and that so to interpret it will endanger, if not destroy, the entire act, notwithstanding the provision in section 59 that, should any section or provision of the act be held unconstitutional or invalid, such holding shall not affect the validity of the act as a whole, or any part thereof other than the part so decided to be unconstitutional. The language of the section, in so far as here involved, is clear, and by deliberate action the Legislature inserted words of limitation. To accede to the construction asked by plaintiff is for the court to legislate, or to state it more accurately, to nullify legislative action and strike out what the General Assembly inserted and insert what it deliberately struck out. This a court may not do.

It would be presumptious to pass at this time on the constitutionality

of the Workmen's Compensation Act. Should the constitutional question ever be properly presented, it will then be time for the court to determine whether the act falls within any constitutional inhibition. If it does not, it will be upheld; but the court will not then be permitted to resort to a forced construction to sustain it. Attorney General v. City of Eau Claire, 37 Wis. 400; 26 Am. & Eng. Ency. Law, 643; Bailey v. P. W. & B. R. Co., 4 Har. (Del.) 389, 44 Am. Dec. 593, 605. Nor may it interpret the section under consideration in a particular way to allay a fear that the validity of the act may, at some future time, be assailed, if such particular interpretation be not now given.

In Bate Refrigerating Co. v. Sulzberger, supra, which involved the construction of a portion of the patent law, Mr. Justice Harlan said:

"In our judgment the language used is so plain and unambiguous that a refusal to recognize its natural, obvious meaning would be justly regarded as indicating a purpose to change the law by judicial action based upon some supposed policy of Congress. But as declared in Hadden v. Collector, 5 Wall. 107, 111 [18 L. Ed. 518]: 'What is termed the policy of the government with reference to any particular legislation is generally a very uncertain thing, upon which all sorts of opinions, each variant from the other, may be formed by different persons. It is a ground much too unstable upon which to rest the judgment of the court in the interpretation of statutes.' 'Where the language of the act is explicit,' this court has said, 'there is great danger in departing from the words used, to give an effect to the law, which may be supposed to have been designed by the Legislature. * * * It is not for the court to say, where the language of the statute is clear, that it shall be so construed as to embrace cases, because no good reason can be assigned why they were excluded from its provisions.' Scott v. Reid, 10 Pet. 524, 527 [9 L. Ed. 519]."

He then considered the injury that might result to American inventors from the enforcement of the law if construed as written, and added:

"If the statute thus construed does not give to the inventor all the benefits he would like to have, the remedy is with another department of the government, and it is not for the courts to tamper with the words of a statute, or by strained construction of legislative enactments, the language of which is clear and explicit, to accomplish results not contemplated by Congress. This court, speaking by Chief Justice Marshall, in United States v. Fisher, 2 Cranch. 358, 385 [2 L. Ed. 304], said that where the meaning of the Legislature was plain, 'it must be obeyed.'"

If the statute as enacted in its operation exempts from its provisions and discriminates against a given class of employés, the fault lies with the General Assembly. It alone may correct the statute. The amendment may have rendered surplusage the words, "and so far as not forbidden by any act of Congress," but that fact will not nullify the intent clearly expressed by the amendment itself. A like conclusion was reached by Judge Rogers, of the court of common pleas of this (Franklin) county.

I am unable to find that any construction has been placed upon the section by any executive department of the state whose duty it is to interpret or enforce it. In the Ohio Law Reporter of August 14, 1913, pp. 179, 180, is a discussion of the Workmen's Compensation Act, in which it is said:

"It does not apply to employers and to their employés engaged exclusively in interstate commerce, but it applies to those engaged in both interstate and

intrastate commerce to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce, but only upon the election of both employer and employés to be governed by its provisions."

That statement coincides with the conclusion here reached.

The motion to strike out is sustained.

---

SCHMERTZ WIRE GLASS CO. et al. v. CONTINUOUS GLASS PRESS CO.