### UNITED STATES v. POLAND et al.

(Circuit Court of Appeals, Ninth Circuit. March 27, 1916.)

No. 2621.

1. PUBLIC LANDS ⊙⟳35(2)—HOMESTEAD ENTRIES—AMOUNTS SUBJECT TO ENTRY—"SINGLE BODY."

Comp. Laws Alaska 1913, § 101 (Act Cong. March 3, 1903, c. 1002, 32 Stat. 1028 [Comp. St. 1913, § 5046]), provides that the provisions of the homestead laws not in conflict therewith are thereby extended to Alaska; that no indemnity, deficiency, or lieu land selections shall be made and

no land scrip or land warrant shall be located except as provided by law; that no more than 160 acres shall be entered in any single body by such scrip, soldier's additional homestead right, etc.; that no such location along any navigable or other waters shall be made within 80 rods of any lands along such waters theretofore located by means of any such scrip or otherwise; that no entry shall be allowed extending more than 160 rods along the shore of any navigable water, and along such shore a space of at least 80 rods shall be reserved from entry between all such claims; and that every qualified person shall be entitled to enter 320 acres or less of unappropriated public land. *Held*, that where a party entered 160 acres under one survey as assignee of a soldier's additional homestead right, and also entered under another survey an adjoining tract of about 160 acres as assignee of another soldier's additional homestead right, and only one of such tracts touched any navigable water, there was no violation of the provision that no more than 160 acres shall be entered in any "single body," as they were two separate and distinct entries and separate and distinct bodies of land under our system of land measurement, and they did not violate the statute, as the statute seeks to protect the shores of navigable waters and not to prohibit the entry of more than 160 acres and less than 320 acres elsewhere than along the shore.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 73; Dec. Dig. ⊝35(2).]

2. STATUTES ⊝16(1)—HOMESTEAD ACT—ENACTMENT—CONFERENCE—AMOUNTS SUBJECT TO ENTRY.

In view of the report of the House conference committee to the House of Representatives, the provision of Act Cong. March 3, 1903 (Comp. Laws Alaska 1913, § 101), that no more than 160 acres shall be entered in any single body by land scrip, soldier's additional homestead right, etc., added to the bill in conference, must be regarded as intended to be germane to the Senate amendment that no entry shall be allowed extending more than 160 rods along the shore of any navigable water, as it is a rule of parliamentary law that a conference committee is not authorized to consider matters neither incorporated in Senate amendments nor brought before the House unless germane to something in the bill.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 14; Dec. Dig. ⊝16(1).]

3. STATUTES ⊝217—AIDS TO CONSTRUCTION—HISTORY AND PASSAGE OF ACT.

In construing a statute, the court could refer to the proceedings in Congress at the time of its passage and the report of a conference committee by which a provision in controversy was added.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 293; Dec. Dig. ⊝217.]

4. PUBLIC LANDS ⊝35(2)—HOMESTEAD ENTRIES—STATUTORY PROVISIONS.

Act Cong. May 14, 1898, c. 299, § 1, 30 Stat. 409, providing relative to lands in Alaska that no entry shall be allowed extending more than 80 rods along the shore of any navigable water, and that along such shore a space of at least 80 rods shall be reserved from entry between all such claims, merely requires the reservation of at least 80 rods along the shore of the navigable water between claims along such shore, and does not require the reservation of such space between an entry on the shore of a navigable water and an adjoining entry however situated with respect to the navigable water.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 73; Dec. Dig. ⊝35(2).]

Rudkin, District Judge, dissenting.

Appeal from the District Court of the United States for the Third Division of the District of Alaska; Fred M. Brown, Judge.

⊝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by appellant, the United States (plaintiff in the court below), against William B. Poland and another, to cancel patent for certain lands, issued by the United States to William B. Poland, appellee; and to cancel deed from the latter to Frederick William Low, appellee, conveying the above-mentioned lands. Demurrer to complaint. Demurrer sustained, and bill dismissed. Decree affirmed.

William N. Spence, U. S. Atty., of Valdez, Alaska, and William A. Munly, Asst. U. S. Atty., of Valdez, Alaska.

S. O. Morford, of Seward, Alaska, and Ira Bronson, J. S. Robinson, and H. B. Jones, all of Seattle, Wash., for appellees.

Before GILBERT and MORROW, Circuit Judges, and RUDKIN, District Judge.

MORROW, Circuit Judge. The United States brought suit in the court below on a date not disclosed in the transcript of record; but an amended complaint was filed October 15, 1914. The object of the suit is to vacate, cancel, and declare null and void a patent of the United States for a tract of land of 160 acres, embraced in United States survey No. 242, in the Kenai recording precinct in the district of Alaska. The patent was issued to one William B. Poland on March 22, 1909, and seems to be regular on its face in every particular. The complaint also prays that a deed executed by Poland, dated May 25, 1909, conveying the land to Frederick William Low, be vacated, canceled, and declared null and void. The amended complaint was not filed until the statute of limitations of six years (section 8 of Act of March 3, 1891, c. 561, 26 Stat. 1095, 1099 [Comp. St. 1913, § 5114]) had nearly run.

The defendant Poland entered the above-mentioned tract of land at the United States land office at Juneau, Alaska, on April 26, 1906, as the assignee of a certain soldier's additional homestead right, under the general homestead laws, and section 101 of the Compiled Laws of Alaska (Act of March 3, 1903, c. 1002, 32 Stat. 1028 [Comp. St. 1913, § 5046]).

On the same day Poland also made an entry at the land office at Juneau, as assignee of a soldier's additional homestead right, under the same acts of Congress as the previously described entry, of a tract of land containing 159.75 acres, embraced in United States survey No. 241. All this appeared upon the face of the record and must have been known to the officers of the Land Department at the date of the entries. Upon this survey and entry, a patent of the United States was issued to Poland on January 20, 1908. The tract of land described in survey No. 242 adjoins the tract of land described in survey No. 241 on the north.

In both the surveys and in the patents issued by the United States for these two tracts of land, their boundaries were described fully and accurately by monuments, courses, and distances. In survey No. 242 and in the patent issued upon that survey, the first call of the description is:

"Beginning at corner No. 1 near the north shore of Resurrection Bay, identical with corner No. 5, United States survey No. 241, an iron pipe three inches in diameter, marked S. 242, cor. No. 1."

The description concludes with the recital, "containing one hundred and sixty acres, being the land embraced within United States survey No. 242, according to the official plat of said survey returned to the general land office by the Surveyor General." The two tracts are shown on the annexed plat:

Nearly the entire length of the southern boundary of survey No. 241 follows the shore line of Resurrection Bay. Survey No. 242 does not touch Resurrection Bay or any other navigable water.

The vacation and cancellation of the patent dated March 22, 1909, issued upon survey No. 242, is sought upon the ground that the patent was obtained in violation of section 101 of the Compiled Statute Laws of Alaska (Act of March 3, 1903, 32 Stat. 1028), which provides that "no more than one hundred sixty acres shall be entered in any single body by such scrip, lieu selection, or soldier's additional homestead right"—referring to the soldier's additional homestead right under which entries Nos. 241 and 242 were made by the defendant Poland.

It is also contended that the patent was obtained in violation of the further provision of the statute: '

"That no entry shall be allowed extending more than one hundred and sixty rods along the shore of any navigable water, and along such shore a space of at least eighty rods shall be reserved from entry between all such claims."

[1] With respect to the first alleged violation of the statute, it is contended that, although the patent issued upon survey No.' 242 embraces but 160 acres, the patent issued upon survey No. 241 embraces 159.75 acres, and that the two together constitute an entry of more than 160 acres in a single body. The defendant Poland did not by his soldier's additional homestead right enter more than 160 acres of land in a single body under survey No. 242. Did he enter more by making the additional entry of the adjoining tract of 159.75 acres under survey No. 241? Technically, he did not. They were two separate and distinct entries and two separate and distinct bodies of land under our system of land measurement. But did he violate the intent and purpose of the statute by making the additional entry when the two together would exceed 160 acres? We think not. What the statute was seeking to protect was the shores of the navigable waters of Alaska, and not to prohibit the entry of a tract of land of more than 160 acres and not more than 320 acres elsewhere than along the shore.

This is plain from the provisions of the act relating to homesteads. Prior to this act, the homestead right was limited in Alaska to 80 acres. Section 1 of Act of May 14, 1898, c. 299, 30 Stat. 409. This area was found insufficient for homestead purposes in that district, and by this act (of March 3, 1903, 32 Stat. 1028) it was expressly increased to 320 acres, subject to the limitation that no entry should extend more than 160 rods along the shore of any navigable water. The term "single body" is not defined in the statute of March 3, 1903, nor by any previous statute; but it refers to acres of land, and must be held to refer to the bodies of acres of land dealt with in the statute. The statute deals with the entries of two bodies of land and qualifies them both; one of "one hundred and sixty rods along the shore of any navigable water," and the other a homestead of "three hundred and twenty acres." With respect to the first body: One hundred and sixty rods is one side of a quarter section of land inclosing 160 acres; that is to say, under our system of land measurement it is the determining measurement of one of four equal sides of 160 acres. The statute adopts this measurement as the descriptive limitation of 160

acres "along the shore of any navigable water." If, on the other hand, the body of land is elsewhere than along the shore of any navigable water, then the limitation of the entry is to an area of 320 acres under the other provision of the statute. It follows that the limitation as applied to these two bodies of land is in entire harmony with their location, and, whichever location we take, the entry or entries are within the limitations of the statute and not in conflict with it.

The next question is: Was the entry by Poland as assignee of two soldiers' additional homestead rights in violation of the statute?

The statute of March 3, 1903, extended all the privileges of the homestead laws of the United States, not in conflict with the provisions of the act, and all rights incident thereto, to the district of Alaska, subject to such regulations as might be made by the Secretary of the Interior. It further provided that no land scrip, nor land warrant of any kind whatsoever, should be located or exercised upon any lands in the said district, except as then provided by law.

The law at that time (Act of May 14, 1898, 30 Stat. 409) extended to the district of Alaska the right to enter surveyed or unsurveyed lands under the provisions of the law relating to the acquisition of title through soldiers' additional homestead rights, but limited each entry under that act to 80 rods along the shore of any navigable water and reserved along such shore a space of at least 80 rods between all such claims. It also limited every homestead in the district to 80 acres in extent. The act of August 30, 1890, c. 837 (26 Stat. 391), had provided that:

"No person who shall after the passage of this act, enter upon any of the public lands with a view to occupation, entry or settlement under any of the land laws shall be permitted to acquire title to more than three hundred and twenty acres in the aggregate, under all of said laws."

In Kiehlbauch v. Simero, 32 L. D. 418, the Secretary of the Interior had held that the limitation in this statute did not apply to an entry made by the assignee of a soldier's additional homestead right, and that such an entry might be made without reference to the assignee's entry of or claim to other lands under any statute whatever. This decision was referred to by the Assistant Secretary of the Interior in the case of William P. Wall, 38 L. D. 566, as declaring the law upon that subject. In Webster v. Luther, 163 U. S. 331, 16 Sup. Ct. 963, 41 L. Ed. 179, it was held that persons entitled under section 2304 of the Revised Statutes (Comp. St. 1913, § 4592), to enter a homestead who may have theretofore entered under the homestead laws a quantity of land less than 160 acres, and who had the right under section 2306 (section 4594 [soldiers' additional homestead right]) to make an additional entry, may assign and transfer that right, and in the hands of an assignee it was without restriction as to quantity.

This was the state of the law at the time of the passage of the act of March 3, 1903, containing the provision "that no more than one hundred and sixty acres shall be entered in any single body by such scrip, lieu selection, or soldier's additional homestead right."

[2] This provision was not contained in the original bill (H. R. No. 12098) as reported to the House on December 6, 1902 (Cong. Rec.

57th Cong., 2d Sess., p. 81). That bill amended section 1 of the act of May 14, 1898, by striking out "eighty" in the last line thereof and inserting "three hundred and twenty," making the statute to read "that no homestead shall exceed three hundred and twenty acres." This was all there was in the bill, and it passed the House in that form without any other change or amendment to the act of May 14, 1898.

In the Senate, the House bill was amended in certain particulars, among others an amendment taking out of the operation of the law the right to commute a homestead entry and the right to enter surveyed or unsurveyed lands under the provisions of the law relating to the acquisition of title through soldiers' additional homestead rights. There was also an amendment providing that no entry should be allowed extending more than 160 rods along the shore of any navigable water. This latter amendment was to take the place of the provision in the act of May 14, 1898, providing that no entry should be allowed extending more than 80 rods along the shore of any navigable water.

The House provision, enlarging the homestead entry from 80 acres to 320 acres in extent, was retained in the bill. The provision that "no more than one hundred and sixty acres shall be entered in any single body by such scrip, lieu selection, or soldier's additional homestead right" was not added in the Senate; in other words, this provision was not in the bill when it was returned to the House for concurrence.

In the House, the Senate amendments were nonconcurred in, and a committee of conference was requested upon the disagreeing votes of the two Houses. A committee of conference was appointed. The provision was not in the bill when the bill was sent to conference. The conference committee reached an agreement and so reported to the two Houses. In this report appears for the first time the provision "that no more than 160 acres shall be entered in a single body."

It is a rule of parliamentary law that a committee of conference is not authorized to consider matters which had neither been incorporated in Senate amendments nor brought before the House, unless germane to something in the bill. Hinds' Parliamentary Precedents, §§ 1414–1417. It will be presumed that the conference report was in accordance with parliamentary law.

Mr. Lacey, chairman of the House conference committee, in his report to the House concerning the amendments, said:

"This is what has been known as the Alaska homestead bill. The proposition is to give homesteads in that country to the extent of 320 acres. The principal matter of difference between the House and the Senate conferees was upon the question of commutation and the use of scrip in Alaska. Upon the question of the use of scrip the agreement leaves these matters substantially as they are now, excepting to make the law clear that scrip shall not be located upon streams in such a way as to make a continuous location, but that a quarter of a mile between any two locations will be reserved. There can be no monopoly of the shores of the water courses. As to commutation, it provides that there may be commutation on a quarter section, but not on the whole amount of 320 acres."

In reply to questions propounded by members of the House, Mr. Lacey said:

"Mr. Speaker, as the bill left the House it was 320 acres. As agreed on now, it is 320 acres. As to commutation, the amount to be commuted is limited to 160 acres."

Mr. Stephens of Texas: "Mr. Speaker, the question I would like to ask is whether or not it changes the law with reference to settlements on these lands?"

Mr. Lacey: "Not at all. It leaves the law the same as it is in other parts of the United States." Congressional Record, 57th Cong., 2d Sess., pp. 2859, 2860.

[3] This reference to the proceedings in Congress in the passage of the act of March 3, 1903, and the report of the conference committee is justified by similar references made by the Supreme Court in Holy Trinity Church v. United States, 143 U. S. 457, 464, 12 Sup. Ct. 511, 36 L. Ed. 226; Binns v. United States, 194 U. S. 486, 495, 24 Sup. Ct. 816, 46 L. Ed. 1087; Oceanic Steam Navigation Co. v. Stranahan, 214 U. S. 320, 333, 29 Sup. Ct. 671, 53 L. Ed. 1013; Northern Pacific v. Washington, 222 U. S. 370, 380, 32 Sup. Ct. 160, 56 L. Ed. 237; McLean v. United States, 226 U. S. 374, 380, 33 Sup. Ct. 122, 57 L. Ed. 260.

In the light of the report of the committee of conference, we must hold that the limitation that "no more than one hundred and sixty acres shall be entered in a single body" was germane to the Senate amendment that "no entry shall be allowed extending more than one hundred and sixty rods along the shore of any navigable water," and that it was so intended.

[4] It is contended, further, that the Act of May 14, 1898 (30 Stat. 409) provides, in section 1:

"That no entry shall be allowed extending more than eighty rods along the shore of any navigable water, and along such shore a space of at least eighty rods shall be reserved from entry between all such claims."

Survey No. 242 does not extend along the shore of any navigable water 80 rods, or any distance, or at all. It does not touch any navigable water, and what we have said concerning the first objection to the entry is applicable to this objection. The provision, that "along such shore a space of at least eighty rods shall be reserved from entry between all such claims," means plainly that a space of at least 80 rods shall be reserved from entry along the shore of the navigable water between claims along such shore. It cannot mean that there shall be reserved a space of 80 rods from any other entry, however situated; such construction would be obviously contrary to the intent and purpose of the statute and inadmissible. We are of the opinion that the complaint did not state a cause of action.

The decree of the court below is therefore affirmed.

RUDKIN, District Judge (dissenting). As will appear from the plat attached to the majority opinion, the appellee Poland has entered and acquired title to approximately 320 acres of land in the district of Alaska, in a single body, by soldier's additional homestead right. It occurs to me that this was a plain and palpable violation of the Act of March 3, 1903 (32 Stat. 1028), extending the homestead laws of the United States to the district of Alaska, and providing, among other things, that:

231 F.—52

"No more than one hundred and sixty acres shall be entered in any single body by such scrip, lieu selection, or soldier's additional homestead right."

A brief reference to the legislative history of this right and to the decisions of the department thereunder will throw some light on the object of the proviso in question. Section 2304 of the Revised Statutes (Comp. St. 1913, § 4592) provides that every private soldier and officer who served in the army of the United States during the Rebellion for 90 days, and who was honorably discharged, and has remained loyal to the government, shall be entitled to enter and receive patents for a quantity of public lands not exceeding 160 acres on certain terms and conditions not material here. Section 2306 (section 4594) provides:

"Every person entitled, under the provisions of section twenty-three hundred and four, to enter a homestead who may have heretofore entered, under the homestead laws, a quantity of land less than one hundred and sixty acres, shall be permitted to enter so much land as, when added to the quantity previously entered, shall not exceed one hundred and sixty acres." .

In Webster v. Luther, 163 U. S. 331, 16 Sup. Ct. 963, 41 L. Ed. 179, it was held that this additional right was transferable without restriction.

In the case of Ole B. Olsen, 33 Land Dec. 225, it was held that the assignee of two or more soldiers' additional homestead rights may locate them as one right upon the same tract of land, provided they equal in the aggregate the amount of land so located.

In the case of Kiehlbauch v. Simero, 32 Land Dec. 418, it was held that the quantity of land which an assignee of a soldier's additional right may enter is not restricted by the Act of August 30, 1890, c. 837 (26 Stat. 391), providing that:

"No person who shall after the passage of this act, enter upon any of the public lands with a view to occupation, entry or settlement under any of the land laws shall be permitted to acquire title to more than three hundred and twenty acres in the aggregate, under all of said laws, but this limitation shall not operate to curtail the right of any person who has heretofore made entry or settlement on the public lands, or whose occupation, entry or settlement, is validated by this act."  .

Or by the Act of March 3, 1891, c. 561 (26 Stat. 1101), providing that the act of August 30, 1890, supra, "shall be construed to include in the maximum amount of lands the title to which is permitted to be acquired by one person only agricultural lands and not to include lands entered or sought to be entered under mineral land laws."

By letter of instructions from the Secretary of the Interior to the Commissioner of the General Land Office under date of June 29, 1905 (33 Land Dec. 606), the same view is again asserted.

The Act of May 14, 1898, entitled "An Act extending the homestead laws and providing for right of way for railroads in the district of Alaska, and for other purposes" (30 Stat. 409), provides that:

"The homestead * * * laws of the United States and the rights incident thereto, including the right to enter surveyed or unsurveyed lands under provisions of law relating to the acquisition of title through soldiers' additional homestead rights, are hereby extended to the district of Alaska, subject to such regulations as may be made by the Secretary of the Interior; and no indemnity, deficiency, or lieu lands pertaining to any land grant whatsoever originating outside of said district of Alaska shall be located within or taken

from lands in said district. Provided, that no entry shall be allowed extending more than eighty rods along the shore of any navigable water, and along such shore a space of at least eighty rods shall be reserved from entry between all such claims, and that nothing herein contained shall be so construed as to authorize entries to be made, or title to be acquired, to the shore of any navigable waters within said district. And it is further provided, that no homestead shall exceed eighty acres in extent."

By letter of instructions from the Secretary of the Interior to the Commissioner of the General Land Office under date of December 4, 1902 (31 Land Dec. 442), it was declared that this proviso did not limit the number of entries that might be made by an assignee of several additional soldier's rights under section 2306 of the Revised Statutes (Comp. St. 1913, § 4594). The letter in question reads as follows:

"This department is in receipt of your letter of November 21, 1902, requesting instructions as to whether or not the last proviso to section 1 of the Act of May 14, 1898 (30 Stat. 409), places a limitation upon the right of the assignee of a soldier's additional right of homestead entry under section 2306 of the Revised Statutes, so as to prevent the assignee of several of such additional rights from making several entries of eighty acres each thereunder of public lands in the district of Alaska. Said proviso is as follows: 'And it is further provided that no homestead shall exceed eighty acres in extent.'

"You express the opinion that the number of entries that may be made by an assignee is not limited by the terms of this proviso, and in this conclusion the department concurs. The limitation is placed upon the acreage that may be included in a single homestead entry, and cannot apply to an assignee who in the exercise of the additional right does not seek to take in any one entry more than eighty acres."

These instructions were followed in a very few months by the Act of March 3, 1903 (32 Stat. 1028), containing the proviso above quoted "that no more than one hundred and sixty acres shall be entered in any single body by such scrip, lieu selection, or soldier's additional homestead right."

From the foregoing it will be seen that prior to the passage of the act of March 3, 1903, there was (a) no limitation on the quantity of land an assignee of soldiers' additional homestead rights might acquire in the district of Alaska, and (b) no limitation on the quantity of land that might be embraced in a single application or location, provided the assigned rights equaled in the aggregate the quantity of land located upon. The appellee Poland made two applications for approximately 320 acres of land in a single body on the same day, as assignee of four separate soldiers' additional homestead rights, and has received patents therefor. There in no reason why the four rights might not have been embraced in a single application or location, and had they been the violation of the statute would be too obvious to admit of question. The statutory prohibition is against acquiring more than 160 acres in a single body by soldier's additional homestead right, not merely a prohibition against acquiring more than 160 acres in a single application or under a single location. Could then the appellee, by making two applications or locations instead of one, and by drawing an imaginary line between the two surveys, thwart the will of Congress and defeat its declared policy? The question suggests its own answer. I see no connection between the proviso that no more than 160 acres of land shall be entered in any single body and the further pro-

viso that no entry shall be allowed, extending more than 160 rods along the shore of any navigable water. The former proviso is complete in itself and speaks for itself. It first appeared in the amendment of 1903 and was intended to accomplish some purpose. How it got there is not material. Suffice it to say it is the law of the land. The purpose of the amendment, however, is disclosed in the legislative history of the act set forth in the majority opinion. The Senate favored the abrogation of the additional homestead right entirely in the district of Alaska; but as a matter of compromise, no doubt, the right was retained, limited, however, to the right to acquire 160 acres in any single body. As already stated, if this legislation only compels the assignee of such rights to so marshal them that not more than 160 acres will be included in a single application or entry, the act accomplishes no useful purpose. The manifest object was to prohibit the acquisition of large bodies of land in the district of Alaska under soldiers' additional homestead rights, and if the majority opinion prevails that object can readily be defeated. I am also of opinion that the affidavit to the effect that survey No. 242 "is more than eighty rods distant from any other survey or entry under the provisions of said act of May 14, 1898," was false whether intentionally so or not; but, if not false, the second patent issued through a manifest mistake which is equally within the corrective power of a court of equity.

The decree should be reversed.