## J. F. MUSHEL v. C. G. SCHULZ AND OTHERS.[1]

### January 25, 1918.

### No. 20,755.

**State aid for schools — appropriations.**

1. State legislatures prior to 1917 provided that public schools of certain designated classes, upon reaching certain specified standards. should receive stipulated amounts annually from the state, and that appropriations made for that purpose, if insufficient to pay all demands in full, should be distributed pro rata. Appropriations made from time to time left a deficit up to July 31, 1916.

**Same.**

2. The legislature of 1917 appropriated an amount for state aid available for the year ending July 31, 1917, and an amount available for the year ending July 31, 1918.

**Construction of statute.**

3. In construing a statute, we may, in case of doubt, take into account the object or purpose of the act, the events leading up to it, the history of the passage of the act through the legislature and modifications made during its course.

**State aid for schools — 1917 appropriation not for deficit in prior years.**

4. Construing this statute in the light of its history and circumstances, and in connection with other legislation, it is *held* it appropriates money for use in payment of aid accruing during the specific years mentioned and does not authorize payment, out of the amount appropriated, of a deficit accruing prior to those years.

Action in the district court for Ramsey county by a resident and taxpayer of Benton county against the superintendent of education, the treasurer and auditor of the state of Minnesota to restrain defendant superintendent from executing any certificate of the amount to go to any schools for special state aid for the school year ending July 31, 1915, or that ending July 31, 1916, to make up any deficit for either of those years, and to restrain defendant auditor and treasurer from

[1] Reported in 166 N. W. 179.

issuing or paying any warrant for the same to be paid out of the appropriation made by the legislature for the school year ending July 31, 1917, or that ending July 31, 1918. From orders overruling their demurrer to the complaint and granting a temporary injunction, Brill, J., who certified to the supreme court the questions presented by the demurrer, defendants appealed. Affirmed.

*Lyndon A. Smith,* Attorney General, and *Clifford L. Hilton,* Deputy Attorney General, for appellant.

*Harris Richardson,* for respondent.

HALLAM, J.

1. Some years ago the state legislature adopted the policy of state aid to public schools which should attain certain prescribed standards. Statutes embodying this policy have been passed by successive legislatures. G. S. 1913, §§ 2927-2948.

Chapter 296, p. 416, Laws 1915, contains the last modification of such statutes. It provides that schools of certain designated classes, upon reaching certain specified standards "shall receive" certain stipulated amounts annually from the state. These statutes created an obligation on the part of the state to the school districts meeting the requirements, but an obligation not enforceable without further legislation, for these statutes carry with them no appropriation. Appropriations were made from time to time, but the appropriations made by the appropriation acts have not been as large as the obligations created by the other set of statutes. As a result, when the 1917 legislature convened, all appropriations made up to that date had been used and still there was an amount unpaid accrued during the fiscal years ending July 31, 1915, and July 31, 1916, of $1,070,193.

2. The legislature of 1915 (c. 356, p. 485, Laws 1915), established a biennial budget system by which every state officer, under whose direction any public money is spent, is required to submit to the Governor not later than December 1 preceding a session of the legislature, a complete estimate of the amount needed in his department "during each year of the ensuing biennial period," and the Governor is required to assemble all such estimates and lay them before the legislature.

On December 11, 1916, the superintendent of education reported his estimate of the amount needed for the biennial period ending July 31, 1919. He reported also the then existing deficit of $1,070,193.

Thereupon the House and Senate passed an appropriation bill, chapter 437, p. 664, Laws 1917. By the terms of this bill as passed by both houses, there was appropriated:

"For aid to * * * schools * * * available for the year ending July 31, 1917, $2,637,545.00."

"For aid to * * * schools * * * available for the year ending July 31, 1918, $2,400,000.00."

"For aid to * * * schools * * * available for the year ending July 31, 1917, only, $1,070,193."

The last item was vetoed by the Governor. The other two items stand in the appropriation bill as passed.

The defendants, state officers, now claim the right to pay the deficit of $1,070,193 arising prior to July 31, 1916, out of the $2,637,545, appropriated "for aid to * * * schools * * * available for the year ending July 31, 1917." Plaintiff, a taxpayer, denies their right to do so, and claims this appropriation can be used only to pay amounts accruing during the year ending July 31, 1917. The trial court sustained this contention, overruled a demurrer to plaintiff's complaint and enjoined the use of this appropriation for payment of any deficit accruing prior to July 31, 1916.

The position of the defendants, stated more at length, is, that an appropriation of funds "available" for a certain fiscal year is not an appropriation for payment of obligations incurred or accruing during that year, but that it creates a fund which may in whole or in part be expended during that year "for the specified general object, irrespective of when the obligation was incurred," and that an appropriation available for the fiscal year ending July 31, 1917, simply places the money so appropriated at the disposal of the state officers to be used for the specified general object without reference to time of accrual of the obligation paid, and may accordingly be used to pay obligations accruing during the prior fiscal years 1915 and 1916. We do not concur in this contention.

3. The question presented involves simply a construction of the meaning of the words used in the 1917 statute. In determining the proper

construction. of a statute, we may, in case of doubt, take into account the object or purpose of the act (Washed Sand & Gravel Co. v. Great Northern Ry. Co. 130 Minn. 272, 153 N. W. 610); the events leading up to it (Funk v. St. Paul City Ry. Co. 61 Minn. 435, 439, 63 N. W. 1099, 29 L.R.A. 208, 52 Am. St. 608); the history of the passage of the act through the legislature (Seven Cases v. U. S. 239 U. S. 510, 36 Sup. Ct. 190, 60 L. ed. 411, L.R.A. 1916D, 164; Connole v. Norfolk & W. Ry. Co. (D. C.) 216 Fed. 823; Tucker v. Williamson (D. C.) 229 Fed. 201; U. S. v. Poland, 231 Fed. 810, 145 C. C. A.630); and modifications made during its course (State v. McCollister, 11 Ohio, 46, 55).

4. Giving the words used their ordinary meaning, an appropriation "for the year ending July 31, 1917," seems to us to intend an appropriation for the current expenses of that year or to defray the obligations of that year. The use of the word "available" for that year does not seem to us to convey any different meaning. This word runs through all the appropriation acts for that year, and, as generally used, we cannot see that it conveys any such intent as defendants claim for it, or that it, in fact, materially adds to or detracts from the other language used.

The construction indicated in the above paragraph is not negatived, but is emphasized by the circumstances and the history of the act.

The statutes creating the right to state aid provide in substance for an annual apportionment or pro rating of any appropriation made, if it is insufficient to pay all demands in full. For example, G. S. 1913, § 2945, provides: "The state superintendent shall annually apportion to such semi-graded and common schools as he shall find entitled to state aid, the amount appropriated for such schools, in equal amounts to all schools of the same class." Section 2933 contains similar provisions for apportionment of amounts appropriated for high schools and graded schools. This requirement of an annual pro rating of the appropriation is inconsistent with the theory that these appropriations are made at large and without limitation as to particular years, and is likewise inconsistent with the idea that the demands of any year are to be paid in full out of funds later appropriated if the annual appropriation is insufficient therefor.

This construction is also emphasized by the fact that the bill, as it

passed both houses, contained a specific appropriation of $1,070,193, the exact amount of the deficit. The incorporation of a specific item for the exact amount of the deficit is indicative of an intent that that item should be applied to payment of the deficit, but it also negatives any intent that the deficit should be paid out of any other item included in the appropriation bill.

It is true, the item of $1,070,193 was included by the use of language substantially the same as used in the item of $2,637,545. But to this it may be said:· The ordinary meaning of the language in both cases, if taken alone, is to make an appropriation for the purposes of the year ending July 31, 1917. It may be that if the item of $1,070,193 had been approved by the Governor and so enacted into law, an intent could be found that the amount appropriated by it, being in the exact amount of the deficit, should be applicable to the payment of the deficit, but, if such result could be reached, it would be because the ordinary meaning of the language must be made to bend to a palpably plain purpose, shown by extraneous circumstances. We have no such impelling consideration in construing the items of $2,637,545.

There is some contention by defendants that the language of this appropriation is susceptible of a construction that the funds made available for a given fiscal year were to pay the aid "earned" during the prior school and fiscal year, so that funds available for the fiscal year ending July 31, 1917, were appropriated to pay aid earned in the school and fiscal year ending July 31, 1916. This contention is based, in part, on the fact that the aid earned during the year ending July 31, 1916, is not required to be certified by the state superintendent before the first day of October following, and partly on an alleged practical construction by which it is said state aid has been paid out on that principle in past years. Whether this practice was proper, under prior appropriation acts, is a question not before us, and we do not consider it. The language of prior acts differs in some particulars from this one. It is very apparent that no such construction of the 1917 act is possible. This act, in terms, makes express reference to distribution "for the school year beginning August 1, 1917," that is, the year ending July 31, 1918. From this, it is clear that the appropriation was intended to cover the biennial period ending July 31, 1918. Taking all these statutes together,

this legislative purpose seems plain: To declare the standard upon which public schools are entitled to state aid and the amount to which they are entitled; then to make appropriations fixing the amount to be used for such purpose for each year with the intent that, if the appropriation falls short, the amount shall be ratably distributed, any deficit to be left to future legislatures to deal with as they see fit. We hold therefore that the appropriation act of 1917 appropriated money for use only in payment of demands for state aid accruing during the years mentioned in the act and did not authorize payment, out of the amount appropriated, of a deficit accruing prior to July 31, 1916. The injunction was therefore properly ordered and the demurrer properly overruled.

No statutory costs will be allowed.

Orders affirmed.

BROWN, C. J. (dissenting).

In my view of this controversy, the distribution of the money in question may safely be left to the high school board, to be made in harmony with the apportionment provided for by law. With the few new districts, those organized subsequent to and which have relied upon the school aid appropriation of 1917, properly taken care of, which readily may be done, it would seem of no special importance whether the money reaches the other districts under the label "deficiency appropriation" or "appropriation for the year 1917." In either case the money will be devoted to the same purpose, namely, the advancement of the educational interests of the districts receiving the same. There may and probably will be a deficiency, but that will be a matter for future legislation. The order appealed from should be reversed and the cause remanded with directions accordingly.

QUINN, J.

I concur with the Chief Justice.